IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No. 09-cv-00004-PAB-MJW

THOMAS R. LEWIS,

    Plaintiff,

v.

DENVER FIRE DEPARTMENT, et al.,

    Defendants.
_____

**ORDER**
_____

This matter is before the Court on the partial motion to dismiss [Docket No. 92] filed by defendants The City and County of Denver, Denver Fire Department, Keith Mehrens, and Nick Nuanes. Defendant Patrick Hynes has also filed a partial motion to dismiss [Docket No. 102] which incorporates by reference the other defendants' motion and reply brief. Moreover, plaintiff has filed a motion for leave to file a fourth amended complaint [Docket No. 112]. The motions are fully briefed and ripe for disposition.

**I. BACKGROUND**[1]

Mr. Thomas R. Lewis, the plaintiff, has worked for the Denver Fire Department since 1982. Since 1993, plaintiff has been a Lieutenant. From 2004 until February of 2009, plaintiff worked at the Denver International Airport ("DIA") station. Plaintiff, who is African American, alleges that, at various times while working at the DIA station, he was

---

[1]The following facts are drawn from plaintiff's third amended complaint [Docket No. 82] and the charge of discrimination referenced therein which plaintiff filed with the Equal Employment Opportunity Commission on July 10, 2007 [Docket No. 92-1].

discriminated against due to his race and later retaliated against for engaging in protected conduct.

More specifically, in July 2006, plaintiff told defendant Keith Mehrens, an Assistant Chief at the DIA station, that Mr. Mehrens should have selected Greg Brewer, an African American firefighter, for a particular position instead of the white firefighter Mr. Mehrens selected. Plaintiff noted Mr. Brewer's seniority and expressed his belief that Mr. Mehrens' selection was motivated by race. In response, "Mr. Mehrens told Mr. Lewis that Mr. Lewis had 'played the race card' and that Mr. Mehrens 'was going to look into pursuing disciplinary actions against' Mr. Lewis." Docket No. 82 at 5, ¶ 22. Mr. Mehrens shortly thereafter falsely accused plaintiff of shoving a white firefighter. An investigation ensued which resulted in a finding that the allegation was "Not Sustained." Docket No. 82 at 5-6, ¶ 26. In October 2006, Mr. Mehrens sent a memorandum to plaintiff, which was also sent to defendant Nick Nuanes, who was the Chief of the Denver Fire Department. In the memorandum, Mr. Mehrens stated that he was disturbed by plaintiff's claims of racial discrimination.

In January 2007, Mr. Mehrens issued a written reprimand to plaintiff for singing what Mr. Mehrens considered to be a threatening song in the station house.[2] Plaintiff denied that the song was threatening and explained that it was a popular song, the lyrics to which had recently been emailed to him by a fellow Fire Department employee. The investigation revealed that nobody who heard the song felt threatened. Yet, Mr. Nuanes upheld Mr. Mehrens' disciplinary action, resulting in plaintiff being found to

---

[2]Plaintiff alleges that Mr. Mehrens re-wrote or re-issued the same reprimand sometime in February. See Docket No. 82 at 6-7, ¶ 29.

2

have violated the Fire Department rule prohibiting employees from "'[e]ngag[ing] in intimidating, threatening or hostile behaviors, physical assault, or other acts of this nature.'" Docket No. 82 at 9, ¶ 37. Plaintiff requested that the reprimand be removed from his personnel file, alleging that other similarly-situated white employees had been given lighter punishments for more serious misconduct. Mr. Nuanes denied the request.

Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC") and "informed Defendants that he was filing an employment discrimination complaint with the EEOC" in May 2007.[3] *See* Docket No. 82 at 9, ¶ 42. In June 2007, somebody left confidential disciplinary documents from plaintiff's personnel file in a public place in plaintiff's station house. Mr. Mehrens was responsible for keeping the documents confidential, but Mr. Nuanes did not sanction Mr. Mehrens for the confidentiality breach.

On July 10, 2007, plaintiff filed his EEOC charge of discrimination, wherein he checked the boxes indicating that the claimed discrimination was based on both "race" and "retaliation." Docket No. 92-1 at 1. Plaintiff specifically described the basis for his charge as follows:

> I. I have been issued unfair disciplinary actions and have been harassed during my employment.
> II. I believe I have been discriminated against because of my race (Black) and in retaliation for having opposed a discriminatory practice in violation of Title VII of the Civil Rights Act of 1964, as amended, in as much as:
>     A. I am performing in a satisfactory manner.
>     B. A white employee falsely accused me of physically assaulting him in 2006. His complaint was investigated and not supported but no

---

[3]Plaintiff contends that he both first contacted the EEOC and filed his complaint in May 2007. The formal charge of discrimination, however, is dated July 10, 2007. *See* Docket No. 92-1.

> disciplinary action was taken against him for the false allegation. This same employee also exposed himself at a fire station and made a lewd comment to his co-workers but no disciplinary action was taken against him.
> C. I complained about the false allegation and about how the investigation into the complaint was handled. I have raised the issue of discrimination with management.
> D. I was accused/disciplined for allegedly violating the Mayor's Executive order forbidding workplace violence. I was accused of singing a song with threatening lyrics and making comments meant to intimidate a Chief (non-Black). I did not violate the order forbidding workplace violence.
> E. I have been harassed during the disciplinary procedure by the Chief making false allegations about me. No action has been taken against the Chief for making the false allegations.
> F. It was reported that I had stated that I did not feel race was an issue in my treatment when in reality, I stated that I did not know if it was.
> G. I was accused of pulling the "race card" when I questioned the unfair treatment of a Black employee. I was further advised that the Chief was looking into the matter to see if some disciplinary action could be taken against me for using the "race card."
> H. I have been threatened with transfer and discharge.

Docket No. 92-1 at 1-2. The EEOC issued plaintiff a "right to sue" letter on December 4, 2008, and plaintiff filed suit on January 5, 2009.

The following day, January 6, 2009, defendant Patrick Hynes, who was a Division Chief of the Airport Division at the time, gave plaintiff a memo indicating the Fire Department's awareness of his lawsuit and stating that plaintiff would be subject to work restrictions and would not be permitted to work shifts overlapping with Mr. Mehrens. Mr. Hynes knew that this would lessen the amount of overtime pay to which plaintiff would be entitled. Then, on January 21, 2009, Mr. Nuanes informed plaintiff in writing that plaintiff was being transferred to another station. Plaintiff requested that the decision be reconsidered because "the sudden reassignment ma[de] it appear to his

4

co-workers that [he] had done something wrong." Docket No. 82 at 11, ¶ 53. Mr. Nuanes denied plaintiff's request.

On February 13, 2009, plaintiff had a dispute while off duty with Todd Strong, an employee of a Verizon cellular telephone store, about plaintiff's telephone bill. Plaintiff "allegedly used cuss words . . ., but did not engage in any threatening conduct." Docket No. 82 at 12, ¶ 55. A Denver police officer was in the store as a customer for part of the conversation, but did not take any action. Mr. Strong asked plaintiff what he did for a living. Plaintiff told him that he was a Denver fireman. Mr. Strong thereafter sent an email to the Denver Fire Department requesting an apology for plaintiff's conduct.

Two days later, Mr. Hynes suspended plaintiff's access to plaintiff's station house and placed plaintiff on administrative leave because of Mr. Strong's complaint. Mr. Hynes also informed plaintiff that the Fire Department internal affairs office would be investigating his conduct. Mr. Nuanes removed himself from the investigation, delegating his authority to Deputy Chief Rex King and Mr. Hynes, though Mr. King took no part in the investigation. Instead, Mr. Hynes oversaw the Fire Department investigators, who included Daniel Diaz. Mr. Diaz went to the Verizon store on February 23, 2009 and later that same day called the Denver Police Department to request that an officer be sent to the store. The responding officer was a relative of Mr. Nuanes. The officer spent approximately two hours at the store, where he met with Fire Department employees. The officer signed a city ordinance violation against plaintiff for disturbing the peace.[4] Plaintiff was arrested on the citation and placed in jail. The

---

[4]Additional factual allegations regarding the investigation and Mr. Diaz's conduct are the substance of plaintiff's proposed fourth amended complaint. The Court will

5

citation served as a primary basis for Mr. Hynes' later recommendation that plaintiff be demoted and reassigned. Plaintiff requested a trial on the citation. On June 1, 2009, the day set for trial, the City Attorney's Office requested that the case be dismissed.

## II. STANDARD OF REVIEW

In their motions, defendants invoke Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint. Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). When resolving a facial attack on the allegations of subject matter jurisdiction, the Court "must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir.1995). To the extent defendants attack the factual basis for subject matter jurisdiction, the Court "may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *SK Finance SA v. La Plata County*, 126 F.3d 1272, 1275 (10th Cir. 1997). "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment in such circumstances." *Id.* Ultimately,

---

discuss those additional facts, to the extent necessary, in the context of addressing plaintiff's motion to amend below.

and in either case, plaintiff has "[t]he burden of establishing subject matter jurisdiction" because he is "the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008). In this case, the Court can determine whether there is subject matter jurisdiction by reference to the allegations in the complaint and the contents of the EEOC claim referenced therein.

As for Rule 12(b)(6), the "court's function . . . is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's Complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted). In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation marks and citation omitted). "In addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). A court, however, need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (omission marks, internal quotation marks, and citation omitted). The "plausibility" standard requires that relief must plausibly follow

from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009) (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (quotation marks and citation omitted).

## III. DISCUSSION

Plaintiff asserts three claims for relief. In the first, plaintiff contends that the actions taken by all the defendants violate 42 U.S.C. § 1981. Plaintiff's second claim for relief, which he brings against defendants City and County of Denver and the Denver Fire Department, arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Plaintiff brings his third claim pursuant to 42 U.S.C. § 1983 against all the defendants, invoking Title VII and § 1981.

### A. <u>Pleading Deficiencies</u>

Defendants seek dismissal of plaintiff's first claim for relief to the extent it seeks recovery from the City and County of Denver, the Denver Fire Department, and the individual defendants in their official capacities. "[D]amages claims against state actors for § 1981 violations must be brought under § 1983." *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1137 (10th Cir. 2006); *see* Docket No. 97 at 4 (where plaintiff

acknowledges this holding). Thus, plaintiff's first claim for relief is improper to the extent he seeks relief against defendants in their official capacities. In his proposed fourth amended complaint filed with his motion to amend, plaintiff remedies this pleading deficiency. See Docket No. 112-1. Therefore, the Court will dismiss plaintiff's first claim for relief against the public entities and individuals in their official capacities.

Defendants also point out that plaintiff's third claim for relief, which is brought under § 1983, relies in part on an alleged Title VII violation. "[A] right created solely under Title VII cannot serve as the basis for an independent remedy under Section 1983." See Starrett v. Wadley, 876 F.2d 808, 813 (10th Cir. 1989). With that said, "[i]f a plaintiff can show a constitutional violation by someone acting under color of state law, then the plaintiff has a cause of action under Section 1983, regardless of Title VII's concurrent application." Id. at 814. Plaintiff does not explain why he should be permitted to bring a § 1983 claim arising out of an alleged Title VII violation, but instead simply provides a generalized summary of what § 1983 provides. Therefore, the Court finds that plaintiff may not assert his third claim for relief to the extent it relies upon Title VII.

### B. Failure to Exhaust Administrative Remedies

Defendants contend that plaintiff failed to exhaust his administrative remedies in regard to "at least six unfiled and discrete allegations of disparate treatment and retaliation" that he pled in support of his Title VII claim. Docket No. 100 at 3. Defendants identify those incidents as follows:

(1) violation of the confidential information policy (June 2007 by Mehrens),
(2) loss of overtime employment opportunities (January 6, 2009 by Hynes),

9

> (3) reassignment to another station house (January 21, 2009 by Nuanes), (4) placement on administrative leave and suspension of station house access (February 15, 2009 by Hynes), (5) demotion and reassignment recommendation (May 22, 2009 by Hynes), (6) demotion and reassignment, and (7) hostile work environment.

Docket No. 92 at 6. Defendants argue that "[a]llegations (1) through (6) are discrete acts that required the Plaintiff to exhaust his administrative remedies with the EEOC." *Id.*

In the Tenth Circuit, "[e]xhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII." *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996) (quoting *Sampson v. Civiletti*, 632 F.2d 860, 862 (10th Cir. 1980)); *see DeWalt v. Meredith Corp.*, 288 F. App'x 484, 490 (10th Cir. 2008) (unpublished) ("Failure to exhaust administrative remedies . . . is a jurisdictional bar to suit.").[5] "[B]ecause failure to exhaust administrative remedies is a bar to subject matter jurisdiction, the burden is on the plaintiff as the party seeking federal jurisdiction to show, by competent evidence, that []he did exhaust." *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002).

Plaintiff concedes that exhaustion is a prerequisite to suit and that the identified allegations were not included within his charge of discrimination filed with the EEOC on July 10, 2007. He argues, however, that a "claim of retaliation for filing an administrative charge with the EEOC is one of the narrow exceptions to the normal rule of exhaustion of administrative remedies." Docket No. 97 at 5. In *Dunlap v. Kansas Dep't of Health and Enviro.*, 127 F. App'x 433 (10th Cir. 2005) (unpublished), the Tenth

---

[5]*Cf. De Walt*, 288 F. App'x at 490 (noting that, while the failure to exhaust implicated the Court's jurisdiction, the timeliness of exhaustion does not).

Circuit noted that, prior to the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), it had held that "'an act committed by an employer in retaliation for filing of an EEOC complaint is reasonably related to that complaint, obviating the need for a second EEOC complaint.'" *Dunlap*, 127 F. App'x at 438 (quoting *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir.1994)). *Morgan*, however, "'abrogate[d] the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replace[d] it with the teaching that each discrete incident of such treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted.'" *Dunlap*, 127 F. App'x at 438 (quoting *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir.2003)). Therefore, plaintiff has not exhausted his administrative remedies regarding the six discrete incidents identified by defendants and may not base his Title VII claim upon them.[6]

Defendants also contend that plaintiff failed to exhaust his administrative remedies regarding his hostile work environment claim. The Court agrees. In order to have exhausted his claim, plaintiff must have "set forth the nature of the claim in sufficient detail that a reasonable reader would understand the charge to be asserting a hostile environment claim." *Carrero v. Arapahoe County Sheriffs Office*, No. 05-cv-

---

[6]With that said, the Tenth Circuit in *Martinez* found that, "[c]onsistent with the [Supreme] Court's opinion in *Morgan*, our holding today does not negate the relevance of allegedly retaliatory incidents as to which administrative remedies have not been exhausted, when these incidents occurred after the filing of the judicial complaint." *Martinez*, 347 F.3d at 1211. In other words, under certain circumstances, an employee may use "'prior acts as background evidence'" supporting an exhausted claim. *Id.* (quoting *Morgan*, 536 U.S. at 113). Such circumstances "may be unusual," *id.*, but the Court does not resolve at this stage whether, if at all, such background evidence might be relevant in this case because plaintiff will be afforded the opportunity to amend his complaint.

02414, 2006 WL 2594472, at *4 (D. Colo. Sept. 11, 2006) (citing *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1260 (10th Cir. 1988); 29 C.F.R. § 1601.12(b)). "To lay a factual foundation for a hostile work environment claim, [plaintiff] must allege facts indicating a workplace 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Mitchell v. City and County of Denver*, 112 F. App'x 662, 668 (10th Cir. 2004) (quoting *Davis v. United States Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998) (quotation omitted)). With that said, plaintiffs are permitted to maintain claims that "can reasonably be expected to follow the charge of discrimination." *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1187 (10th Cir. 2007) (quotation omitted). The Court must "liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim." *Id.* at 1186.

In this case, while the charge includes the allegation that plaintiff is being "harassed," the Court finds that this alone does not "give reasonable notice to the Defendant that the Plaintiff was alleging a hostile environment claim." *Carrero*, 2006 WL 2594472, at *4. Plaintiff did not check the box on the EEOC complaint form indicating that the discrimination and retaliation constituted "continuing action," but instead indicated the conduct occurred between July 14, 2006 and May 1, 2007. *See* Docket No. 92-1. These dates, and the substance of the allegations that follow, provided defendants with reason to believe plaintiff was alleging discrete acts of race-based discrimination and retaliation. That plaintiff described what he was subjected to

as harassment does not constitute notice that such harassment amounted to "treatment in manner or degree sufficient to allege a hostile work environment." *Mitchell*, 112 F. App'x at 668; *see Hodge v. United Airlines*, 666 F. Supp. 2d 14, 22 (D.D.C. 2009) (finding that plaintiff failed to exhaust his hostile work environment claim despite referencing a "letter of har[]assment" he had sent to his employer because such "information [was] not specific or elaborate enough to allow the EEOC to infer the existence of a hostile work environment"). Consequently, the Court finds that plaintiff has failed to exhaust his hostile work environment claim against defendants.[7]

### C. Motion to Amend

Plaintiff seeks leave to file a fourth amended complaint to reflect information received during depositions of Mr. Strong and another store employee, Ana Bautista, taken on June 28, 2010 as part of separate federal lawsuit filed in this district.[8] *See Lewis v. Strong, et al.*, Case No. 09-cv-02861-REB-KMT.

Federal Rule of Civil Procedure 15(a)(2) provides that a court should "freely give leave [to amend] when justice so requires." The scheduling order's April 27, 2009 deadline for amendment of pleadings has passed. *See* Docket No. 11 at 8. Therefore,

---

[7]In their partial motions to dismiss, defendants also contend that plaintiff has failed to state a prima facie case of discrimination or retaliation. In separate motions to dismiss based on qualified immunity [Docket Nos. 93, 101], defendants Mehrens, Nuanes, and Hynes seek dismissal of the claims against them in their individual capacities. Because plaintiff will be afforded the opportunity to amend his complaint, the Court declines the opportunity to resolve whether the allegations of the third amended complaint would survive either argument.

[8]Moreover, plaintiff has attempted to remedy certain of the pleading deficiencies identified in defendants' motions. Defendants object to granting plaintiff leave to file a fourth amended complaint.

13

Federal Rule of Civil Procedure 16(b)(4) is also implicated. It provides that a "schedule may be modified only for good cause and with the judge's consent." "Although the Tenth Circuit has not adopted a rule on the interaction between Rule 15(a) and Rule 16(b), courts in this district have applied the framework articulated in *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001), to cases where the scheduling order deadline has passed." *Texas Instruments, Inc. v. BIAX Corp.*, No. 07-cv-02370-WDM-MEH, 2009 WL 3158155, at *1 (D. Colo. Sep. 28, 2009) (citations omitted).

Under that framework, plaintiff must "first demonstrate . . . that it has 'good cause' for seeking modification of the scheduling deadline." *Pumpco*, 204 F.R.D. at 668 (quotations and citation omitted). Good cause "means that scheduling deadlines cannot be met despite a party's diligent efforts." *Id.* (quotations and citation omitted). If plaintiff can show good cause, the Court turns to the Rule 15(a) standard. *See id.* at 669. Pursuant to Rule 15(a), "'[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'" *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)). There is a "rough similarity between the 'good cause' standard of Rule 16(b) and [the Tenth Circuit's] 'undue delay' analysis under rule 15." *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006).

Plaintiff has shown good cause to amend his complaint. Mr. Strong testified in *Lewis v. Strong* that either Mr. Diaz or the City Attorney's Office encouraged him to file a police complaint against plaintiff, although Mr. Strong did not see why that was necessary. Ms. Bautista testified that Mr. Diaz knew the officer who arrived at the store on February 23, 2009, that five or six Fire Department officials visited her at the store in the days after Mr. Strong sent his email to the Fire Department, and that Mr. Diaz also encouraged her to file a police complaint, though she had not thought to do so previously, and informed her that, in order to file a complaint against plaintiff with the Fire Department, Ms. Bautista was required to file a police complaint.

In a fourth amended complaint, plaintiff seeks to include additional factual allegations, to add Mr. Diaz as a defendant, and to assert a claim arising under 42 U.S.C. §§ 1985 and 1986 based on the aforementioned conduct surrounding the events at the Verizon store. The facts upon which these additions are based came to plaintiff's attention long after the April 27, 2009 deadline for amendment of pleadings. Defendants' contention that plaintiff has been aware of these facts for some time is unpersuasive. Defendants merely point out that plaintiff knew that Mr. Diaz was assigned to the investigation, was at the store on February 23, 2009, and called for a police officer. The allegations underlying the fourth amended complaint go well beyond such facts, and defendants do not identify facts available to plaintiff before June 28, 2010 that would have supported the proposed allegations and claims. Moreover, defendants do not argue that the proposed changes would be futile. *Cf. Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (stating that the purpose of Rule 15(a) is to "provide litigants 'the maximum opportunity for each claim to be decided on

15

its merits rather than on procedural niceties.'") (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir.1982)).

Defendants also contend that plaintiff's acquisition of the information violated the "spirit" of the stay of discovery. They do not explain how the deposition of defendants in a separate federal action, or the specific questions posed, were somehow inappropriate in light of the stay. Regardless of the merits of *Lewis v. Strong*, it involves different defendants than this action. Nor is there any indication that the depositions of Mr. Strong or Ms. Bautista imposed any cost or burden on defendants other than that which might flow from having to defend against newly discovered facts. The stay of discovery is not itself an immunity from good faith factual allegations. Rather, it stems from defendants' assertion of the qualified immunity defense, which aims to prevent government officials from being subjected to "the costs of trial or to the burdens of broad-reaching discovery." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). To date, defendants have been subjected to neither, and the stay of discovery remains in place. In short, plaintiff has shown good cause for the Court to grant leave to amend, and defendants have identified no persuasive basis to deny such leave.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the defendants' partial motions to dismiss [Docket Nos. 92, 102] are GRANTED in part and DENIED in part as moot. It is further

**ORDERED** that plaintiff's motion to amend [Docket No. 112] is GRANTED in part and DENIED in part. Plaintiff's request to file the proposed complaint [Docket No. 112-

1] attached to his motion for leave to amend [Docket No. 112] is denied.  The Court grants plaintiff leave to file a fourth amended complaint on or before October 29, 2010.  It is further

**ORDERED** that, in light of the foregoing, the defendants' motions to dismiss based on qualified immunity [Docket Nos. 93, 101] are DENIED as moot.  It is further

**ORDERED** that defendants' motion for leave to file a sur-reply to plaintiff's motion for leave to amend [Docket No. 116] is DENIED as moot.

DATED September 28, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge