IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 09-cv-0004-RBJ-MJW

THOMAS R. LEWIS,

      Plaintiff,

v.

DENVER FIRE DEPARTMENT, et al.

      Defendants.

---

## ORDER

---

    This matter is before the Court on motions to dismiss claims against defendants Nick Nuanes, Keith Mehrens and Patrick Hynes based upon qualified immunity (docket #119); to dismiss claim against defendant Daniel Diaz, also based upon qualified immunity (#129); and partially to dismiss claims against all defendants pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted (##121 and 130).

    **Facts**[1]

    Plaintiff, Thomas Lewis is an African-American fireman who, at all relevant times, has been an employee of the City and County of Denver assigned to the Denver Fire Department. Mr. Lewis was promoted to Lieutenant in 1993.  From 2004 until February 2009 Mr. Lewis was assigned to the Denver International Airport ("DIA") station.

---

[1] All facts are taken from plaintiff's Fourth Amended Complaint (#118).

Mr. Lewis alleges that in July 2006 he told defendant Keith Mehrens, an Assistant Fire Chief, that Greg Brewer, an African-American firefighter, should have been selected for an assignment rather than the white fire fighter with less seniority whom Mr. Mehrens had selected. Mr. Lewis indicated that he believed that Mr. Mehrens based his assignment decision on race. Fourth Amended Complaint ¶22.  Mr. Mehrens responded that Mr. Lewis had "played the race card," and he told Mr. Lewis that he "was going to look into pursuing disciplinary action." *Id.* ¶23.

Shortly thereafter Mr. Mehrens accused Mr. Lewis of violating departmental policies regarding a shoving incident with a white fire fighter.  An internal investigation concluded that the allegation was "Not Sustained." *Id.* ¶¶24-27.

In October 2006 Mr. Lewis complained about racial discrimination to his supervisors. Plaintiff alleges that on or about October 31, 2006 Mr. Mehrens sent a memo to Mr. Lewis, with copies to the Fire Chief, defendant Nick Nuanes and other Fire Department employees, entitled "Lt. Tom Lewis' Discrimination Claim."  The memo stated, in part, "[d]uring the meeting held on October 25, 2006 you made several comments that indicated you believe that racial discrimination may have been a motivating factor in my recent transfer decisions….[T]he inference was disturbing and clear to me." *Id.* ¶28.

On January 5, 2007 Mr. Mehrens issued a "Written Reprimand" to Mr. Lewis which referred to incidents that allegedly occurred on December 15, 2006.  The reprimand stated, "[y]ou sang threatening songs and made a number of comments that I believe were meant to intimidate me."  Mr. Mehrens accused Mr. Lewis of violating the Denver Fire Department Code of Conduct Standards rule that prohibits engaging in "intimidating threatening or hostile behaviors, physical assault, or other acts of this nature."  A second "Written Reprimand," dated

January 23, 2007 and signed by Mr. Mehrens on or about February 23, 2007, is alleged to be a re-write or re-statement of the January 5, 2007 reprimand.  *Id.* ¶¶30-31.  Mr. Lewis denied the allegations, filed an appeal of the written reprimand, and requested that there be an investigation into Mr. Mehrens' false accusations.  An internal investigation of Mr. Lewis' appeal sustained the January 23, 2007 reprimand "solely on the mere fact that Lieutenant Lewis knowingly sang an inappropriate song in the work environment."  *Id.* ¶¶32-37.  Mr. Lewis contends that his punishment was more severe than penalties given to similarly-situated white coworkers for more egregious conduct.  Mr. Lewis cites an incident when Jason Cole, a white fire fighter, exposed his genitals while on duty and in uniform, and made crude sexual remarks.  According to Mr. Lewis, Mr. Cole received less punishment than Mr. Lewis did.  *Id.* ¶42.  Mr. Lewis does not state what punishment Mr. Cole received.

On or about June 11, 2007 Mr. Lewis discovered that a "Contemplation of Discipline Notice" regarding him had been left in a public area of the station house to which he was assigned, thus potentially giving co-workers access to portions of Mr. Lewis' personnel file and negative information about him.  Mr. Mehrens was responsible for keeping the notice confidential.  *Id.* ¶45.

On January 5, 2009 Mr. Lewis filed his original complaint in this case, accusing the Denver Fire Department and Mr. Mehrens of discrimination and retaliation based on his race. (docket #1).  February 13, 2009 Mr. Lewis was involved in an altercation at a Verizon store with Todd Strong, a Verizon phone store employee.  Mr. Strong complained, both orally and in writing, to the Denver Fire Department about Mr. Lewis' behavior.  As a result, Mr. Lewis was placed on administrative leave on February 15, 2009, and an investigation was initiated. Division Chief Patrick Hynes was placed in charge of the investigation, but according to him, he

hired a private firm to conduct the investigation. *Id.* ¶62.  Nevertheless, an investigator with the Internal Affairs Bureau of the Denver Fire Department, Daniel Diaz, went to the store and summoned a Denver Police Officer.  *Id.* ¶¶11, 64.  A store employee (*Id.* ¶163) or two employees (*Id.* ¶66) allegedly have indicated that Mr. Diaz encouraged him or them to file a police complaint because "an arrest would help their case."  Plaintiff alleges that Mr. Diaz arranged for an ordinance violation citation to be issued by a police officer related to Chief Nuanes.  *Id.*¶163.  In any event, a citation was issued to Mr. Lewis for violation of a city ordinance.  At the conclusion of the investigation of the incident, Mr. Lewis was demoted and reassigned.  *Id.* ¶68.  Mr. Hynes allegedly has said that the citation was one of the primary reasons for the demotion.  *Id.* ¶69.  Shortly thereafter the City asked a judge to dismiss the citation for violation of an ordinance.  *Id.*¶71.  Mr. Lewis claims that his treatment and punishment were more severe than that given to other similarly situated white firefighters.  *Id.* ¶73.

Additional allegations of fact in the Fourth Amended Complaint facts relating to each individual defendant will be discussed below.  Based upon the alleged facts, plaintiff asserts seven claims for relief: (1) against defendant Nick Nuanes in his official and individual capacities, violations of 42 U.S.C. §§ 1981 and 1983, based on racial discrimination and retaliation; (2) against defendant Keith Mehrens, same; (3) against defendant Patrick Hynes, same; (4) against defendant Daniel Diaz, same; (5) against defendants Hynes and Diaz, conspiracy in violation of 42 U.S.C. §§ 1983, 1985 and 1986; (6) against defendants City and County of Denver and the Denver Fire Department, violations of 42 U.S.C. §§ 1981 and 1983; and (7) against defendants City and County of Denver and the Denver Fire Department, violation of Title VII of the Civil Rights Act of 1964, , 42 U.S.C. §§2000e et seq.

**Standard**

Qualified Immunity.

Qualified immunity is an affirmative defense that must be pleaded by a defendant

official. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Government officials who are

performing discretionary functions are "shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Id.* at 818. This standard translates into a two-prong

inquiry: (1) do the facts alleged show that the official's conduct violated a Constitutional right?

and (2) if so, was the law violated clearly established? *Saucier v. Katz*, 533 U.S. 194, 202

(2001); *Casey v. City of Federal Heights*, 509 F.3d 1278, 1282 (10th Cir. 2007).

Regarding the first part of the two-part test, "a court must decide whether the facts that a

plaintiff has alleged or shown make out a violation of a constitutional right. *Herrera v. City of*

*Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009). *See Sawyer v. County of Creek*, 908 F.2d

663, 665 (10th Cir. 1990). Plaintiffs "must do more than abstractly identify an established right,

but must specifically identify the right and conduct . . . which violated that right." *Lighton v.*

*University of Utah,* 209 F.3d 1213, 1221 (10th Cir. 2000). With respect to the second test, a right

is clearly established if it would have been "clear to a reasonable [person] that his conduct was

unlawful under the circumstances presented." *Herrera,* 589 F. 3d at 1070. The law must be

"sufficiently clear that a reasonable official would understand that what he is doing violates that

right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

A complaint against an individual defendant in his official capacity is in substance a

complaint against the employer. *Hafer v. Melo,* 502 U.S. 21, 25 (1991); *Meade v. Grubbs,* 841

F.2d 1512, 1519 (10th Cir. 1988). Therefore, defendants' motion to dismiss claims based upon

5

qualified immunity is directed to the claims against the individual defendants in their individual capacities.

#### Failure to State a Claim

In reviewing a motion to dismiss for failure to state a claim, the Court assumes that the well-pleaded facts in plaintiff's complaint are true. *Estelle v. Gamble*, 429 U.S. 97, 99 (1976). However, a complaint must set forth a plausible, not merely a possible, claim. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Atwell v. Gabow,* 311 F. Appx. 122, 125 (10th Cir. 2009).

**Conclusions**

#### Nick Nuanes

Nick Nuanes, at all times relevant to these incidents, was the Chief of the Denver Fire Department.  A number of plaintiff's background allegations concern actions involving Mr. Nuanes: he presided over Mr. Lewis' April 23, 2007 pre-disciplinary meeting; he approved Mr. Mehrens' disciplinary action (the written reprimand based on the inappropriate song), and did not investigate the allegedly false accusations that were involved in that matter; he refused to remove Mr. Lewis' written reprimand from his personnel file; he acknowledged that Mr. Lewis' "Contemplation of Discipline Notice" was improperly left in a public area but did not sanction Mr. Mehrens for failing to comply with the Fire Department's confidentiality policy.

However, plaintiff's claim against Mr. Nuanes, set forth as the "First Cause of Action" in the Fourth Amended Complaint, is based on one distinct event.  On January 5, 2009 Mr. Lewis filed his original complaint in this case, naming the Denver Fire Department and Keith Mehrens as defendants.  On January 21, 2009 Mr. Nuanes sent a memo to Mr. Lewis indicating that he had been informed of the suit.  His memo states, "The complaint alleges unlawful employment

practices by Defendants which constitute illegal, intentional discrimination based upon race and retaliation.  In light of the seriousness of the allegations and the fact that you and Assistant Chief Mehrens are both assigned to Station 32, the Department is transferring you to Truck 31-C shift effective Thursday January 22, 2009."  Plaintiff alleges Mr. Nuanes transferred him "because of Mr. Lewis' race and/or in retaliation for filing this lawsuit."  Fourth Amended Complaint ¶89.

Mr. Nuanes asserts that the claim against him in his individual capacity is barred by qualified immunity.  There is no question but that Mr. Nuanes' decision to transfer Mr. Lewis was based on the filing of the present lawsuit.  His memo of January 21, 2009 says so explicitly. However, there is nothing in that memo that suggests either than the transfer decision was motivated by discriminatory intent or by retaliation for the filing of the suit.  On the contrary, the memo recognized that Mr. Lewis' lawsuit alleged serious claims of racial discrimination against Mr. Mehrens and that the two men were both assigned to the same fire station.  Implicit in the memo is the Fire Chief's decision that the two men should not continue to work in the same station while the suit is pending.

Mr. Lewis complains that the transfer was undesirable to him for various reasons.  That does not, however, indicate that the transfer was based on discriminatory intent.  As indicated above, "a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right."  *Herrera v. City of Albuquerque*, 589 F.3d at 1070.  Mr. Lewis "must do more than abstractly identify an established right, but must specifically identify the right and conduct . . . which violated that right."  *Lighton v. University of Utah,* 209 F.3d at 1221.  The Court finds and concludes that Mr. Lewis has not met that burden.  Therefore, defendants' motion to dismiss the claims against Mr. Nuanes in his individual capacity (#119) is GRANTED.

Keith Mehrens

Plaintiff's claim against Mr. Mehrens, stated in his Second Cause of Action, is based on several separate incidents as recited above. Briefly, in July 2006 he complained that Mr. Mehrens discriminated against an African-American fireman based on his race. Mr. Mehrens took offense. Shortly thereafter Mr. Mehrens made a complaint against Mr. Lewis that was investigated and determined to be unfounded. A few months later Mr. Lewis again accused Mr. Mehrens of making a personnel decision based upon race. Again Mr. Mehrens took offense. In early 2007 Mr. Mehrens issued a written reprimand to Mr. Lewis for engaging in intimidating, threatening or hostile behaviors. After investigation, the reprimand was upheld based solely upon Mr. Lewis' singing an inappropriate song at work. Finally, Mr. Lewis discovered that a confidential document concerning his disciplinary action had been left where other employees could see it. He alleges that it was Mr. Mehrens' responsibility to maintain the confidentiality of the document.

Defendants move to dismiss the claim against Mr. Mehrens based on qualified immunity (#119) and, insofar as the claim is based on the written reprimand, failure to state a claim upon which relief could be granted (#121). I will address the Rule 12(b)(6) motion first.

To make out a prima facie case of discrimination, Mr. Lewis must demonstrate "(1) membership in a protected class, (2) an adverse employment action, and (3) disparate treatment among similarly situated employees." *Carney v. City and County of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008). Defendants argue that a written reprimand is not an "adverse employment action." To be an adverse employment action the employer's conduct "must be 'materially adverse' to the employee's job status," i.e., "must amount to 'a significant change in

employment status,' such as 'firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Meiners v. University of Kansas*, 359 F.3d 1222, 1230 (10th Cir. 2004). A written reprimand generally is insufficient to constitute an adverse employment action. *See Medina v. Income Support Div., New Mexico,* 413 F.3d 1131, 1137 (10th Cir. 2005)(warning letter); *Rennard v. Woodworker's Supply, Inc.,* 101 Fed. Appx. 296, 307-08 (10th Cir. 2004)(written reprimand); *Haynes v. Level 3 Communications, LLC,* 456 F.3d 1215, 1224 (10th Cir. 2006)(written warning); *Mirzai v. State of New Mexico General Service Department,* 506 F. Supp. 2d 767, 785 (D.N.M .2007)(written reprimand).

Mr. Lewis agrees that a written reprimand generally is not an adverse employment action sufficient to withstand a motion to dismiss. Response, #124, at 3. However, he contends that this written reprimand should be viewed as an adverse employment action, because it contained serious but false statements that Mr. Lewis threatened Mr. Mehrens and another high ranking Fire Department official. *Id.* at 4. In the Fourth Amended Complaint he alleges that the reprimand casts him in a negative light and will follow him, and adversely affect his employment opportunities, throughout his career. *Id.* at ¶39.

Naturally the Department can and presumably will review Mr. Lewis' personnel file, including the written reprimand, when it considers future personnel actions regarding him. That does not make this reprimand unique. Moreover, the reprimand was based solely on the singing of a song to which he admitted. The other allegedly intimidating or threatening acts were not sustained. This simply emphasizes that this reprimand did not rise to the level of an adverse employment action within the meaning of cases such as *Meiners v. University of Kansas*, 359 F.3d at 1230.

If a written reprimand were part of a pattern of discriminatory conduct by Mr. Mehrens that resulted in an adverse employment action, then it would not be appropriate to remove it from the case on a motion partially to dismiss.  However, plaintiff does not attribute any adverse employment action to Mr. Mehrens other than the written reprimand.  Although plaintiff's complaint has been amended and updated several times, he still has not alleged that Mr. Mehrens had a role in Mr. Lewis' demotion following the Verizon incident in 2009.  Therefore, the motion partially to dismiss the claim with respect to Mr. Mehrens (#121) is GRANTED.

With respect to qualified immunity, it is certainly true that Mr. Lewis has alleged that Mr. Mehrens took actions (an initial complaint that proved to be unfounded, a second complaint that was sustained only in part) based on his race.  However, as indicated above, he "must do more than abstractly identify an established right, but must specifically identify the right and conduct . . . which violated that right."  *Lighton v. University of Utah,* 209 F.3d at 1221.  He still has not come forward with any facts suggesting that the first complaint was racially motivated.  The second complaint was sustained based upon conduct that Mr. Lewis admitted.  He has not alleged that Mr. Mehrens left the confidential document in a place where others could see if, or even if he did, that this was done intentionally and motivated by race.  Instead, what comes across from the Fourth Amended Complaint is that Mr. Lewis and Mr. Mehrens have a personality conflict, and that Mr. Lewis believes that it is racially based.  That is not enough.

Accordingly, the motion to dismiss the claims against Mr. Mehrens in his individual capacity based on qualified immunity (#119) is GRANTED.

Patrick Hynes

Patrick Hynes, the Division Chief of the Airport Division of the Denver Fire Department, gave Mr. Lewis a memo on January 6, 2009 – the day after he filed his original complaint in this

case – that, according to Mr. Lewis, indicated that was now "subject to work restrictions and was prohibited from 'time-trades or overtime shifts' if those overlap with the hours worked by Mr. Mehrens." Fourth Amended Complaint ¶52.  Mr. Hynes also headed up the investigation of the Verizon store incident.  Allegedly he included bad comments but not good comments that he received.  *Id.* ¶¶164-65, 167.  Ultimately, Mr. Hynes recommended that Mr. Lewis be demoted and reassigned.  *Id.* ¶

As discussed above, Mr. Lewis must plead facts that, if true, would make out a claim for unconstitutional discrimination against Mr. Hynes in order to defeat a claim of qualified immunity.  The complaint about "work restrictions" is too vague to amount to an adverse employment action.  Plaintiff alleges that the work restriction prevented Mr. Lewis from accepting any "time-trades or overtime shifts" that would overlap with the hours worked by Mr. Mehrens.  However, insofar as plaintiffs' allegations show, the restriction only prohibits Mr. Lewis from taking on overtime shifts that would overlap with Mr. Mehrens.  Given the obvious friction between the two men, such a restriction does not on its face suggest discriminatory intent.  Plaintiff did not allege that Mr. Lewis' standard schedule was changed or that he could not accept any time-trade or qualify for any overtime pay.

Further, Mr. Lewis does not allege sufficient facts to make out a claim of retaliation by Mr. Hynes with regard to his demotion.  According to the allegations in the Fourth Amended Complaint, Mr. Hynes did not institute the investigation himself.  He was assigned to the investigation by Mr. Nuanes.  Mr. Lewis contends that Mr. Hynes conducted the investigation into the Verizon incident.  Seemingly inconsistently, plaintiff alleges that a private investigation firm was hired to conduct the investigation.  Plaintiff alleges that Mr. Hynes conducted the investigation with a purpose to gather evidence for Mr. Lewis' demotion, in retaliation for Mr.

Lewis filing this lawsuit. However, other than a conclusory allegation, the Fourth Amended Complaint alleges no facts that suggest that Mr. Hynes fabricated the bases for the demotion or that he acted with an improper motive.

In short, Mr. Lewis has not provided a plausible factual basis to support the allegation that Mr. Hynes has discriminated or retaliated against him on the basis of race. As with Mr. Mehrens he "must do more than abstractly identify an established right, but must specifically identify the right and conduct . . . which violated that right." *Lighton v. University of Utah,* 209 F.3d at 1221. However, he has pleaded nothing other than conclusory allegations. This is even more so with respect to the alleged conspiracy between Mr. Hynes and Mr. Diaz to violate Mr. Lewis' rights to non-discriminatory treatment. Therefore, defendant's motion to dismiss the Third and Fifth Causes of Action against Mr. Hynes based on qualified immunity (#119) is GRANTED.

<u>Daniel Diaz</u>

As indicated, Daniel Diaz was an investigator with the Internal Affairs Bureau of the Denver Fire Department. Mr. Lewis alleges that Mr. Diaz discriminated and retaliated against him in violation of 42 U.S.C. §§ 1981 and 1983 (Fourth Cause of Action), and that he conspired with Patrick Hynes in violation of 42 U.S.C. §§ 1983, 1985 and 1986 (Fifth Cause of Action).

Plaintiff alleges that, despite the fact that Mr. Hynes had allegedly transferred the investigation of the Verizon incident to the private investigation firm, Mr. Diaz appeared at the store ostensibly to investigate the incident. He requested that a Denver Police Officer be dispatched to the scene. He allegedly encouraged store employees to file a complaint with the police "because an arrest would help [the Fire Department's] case." Fourth Amended Complaint

¶¶66, 163.  The police officer did cite Mr. Lewis for violation of a City ordinance, and allegedly, the citation was a primary factor in the ultimate decision to demote Mr. Lewis.

These allegations, accepted for this purpose as true, set forth a plausible claim of retaliation against Mr. Lewis for his having filed a discrimination lawsuit.  The demotion resulting from the investigation unquestionably was an adverse employment action.  The Court expresses no opinion as to whether there is any merit to the claim or even as to whether any of the allegations can be sustained by evidence.  The Court only finds that plaintiff has done enough to avoid dismissal of the claim against Mr. Diaz in the Fourth Claim based upon the defense of qualified immunity.

Defendant's piggy-back motion for partial dismissal under Rule 12(b)(6) (#130) is DENIED as moot.  That motion sought dismissal to the extent the claim is based on the written reprimand, which is not relevant to Mr. Diaz.  The Court does, however, *sua sponte* dismiss the Fifth Cause of Action which asserts a conspiracy with Mr. Hynes.  As indicated above with respect to Mr. Hynes, plaintiff has not alleged facts sufficient to support the existence of a conspiracy between the two men to retaliate for the filing of this lawsuit or otherwise to discriminate based on race.

Denver Fire Department

Defendant Denver Fire Department joins in motion #121 seeking partial dismissal of the Fourth Amended Complaint to the extent that it claims that the written reprimand constitutes an adverse employment action.  As indicated above, written reprimands, standing alone, generally do not constitute adverse employment actions.  However, unlike the claim against Mr. Mehrens individually, the claim against the Denver Fire Department can be read as alleging that the written reprimand was part of a pattern of conduct that ultimately resulted in the demotion and

reassignment of Mr. Lewis.  The Court is not prepared to carve the written reprimand out of the case against the Fire Department on a Rule 12(b)(6) motion.  That is not to say that the Court has or expresses any opinion as to the merits of any claim or claims against the Fire Department. The Court only finds that plaintiff has alleged a sufficiently plausible claim of racially motivated discrimination or retaliation, considering all of the allegations against various employees and managers collectively, to withstand dismissal on such a motion.

**Order**

1. Motion #119 is GRANTED in part and DENIED in part.  It is GRANTED as to defendants Nuanes, Hynes, and Mehrens but DENIED as to defendant DIAZ.

2. Motion #121 is GRANTED in part and DENIED in part.  It is GRANTED as to defendant Mehrens.  It is denied as to defendant Denver Fire Department.  It is denied as moot as to defendants Nuanes, Hynes and Diaz.

3. Motion #129 is DENIED.

4. Motion #130 is DENIED as moot.

5. The Court *sua sponte* dismisses the Fifth Cause of Action in the Fourth Amended Complaint for failure to state a claim upon which relief could be granted.

DATED this 29th day of December, 2011.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge