IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 09-cv-0004-RBJ-MJW

THOMAS LEWIS,

    Plaintiff,

v.

DENVER FIRE DEPARMENT, et al,

    Defendants.

## ORDER

This case comes before the Court on "Defendants' Corrected Amended Motion for Summary Judgment" [#193].

**Facts**

Thomas R. Lewis is an African American firefighter who began working for the Denver Fire Department in 1982. In 2003 Mr. Lewis was promoted to Lieutenant. He was assigned to the Denver International Airport (DIA) station from 2004-2009. Mr. Lewis alleges that beginning in 2006 he was discriminated against because of his race and retaliated against for engaging in protected conduct that culminated in his being transferred to a different fire house and demoted from the rank of Lieutenant.

Prior to 2006 Mr. Lewis had several disciplinary complaints. He was late to work and received a 12 hour suspension. In 2001 Mr. Lewis was seen entering a residence that was known by Denver police to be a crack cocaine house. After leaving the house Mr. Lewis was pulled over by Denver police for failing to stop at a stop sign. At the time, Mr. Lewis was driving a

vehicle owned by the Denver Fire Department, and he did not have a driver's license. There was also some speculation as to whether Mr. Lewis had been drinking. Mr. Lewis was not cited by the Denver police officers, but the incident was reported to the Denver Fire Department. Mr. Lewis received an 80 hour suspension from the Manager of Safety.

In July 2006 Mr. Lewis told Keith Mehrens, an assistant chief at the DIA station, that because of seniority Mr. Mehrens should have selected a particular African American firefighter for a position instead of the white firefighter that Mr. Mehrens selected. Shortly after that Mr. Mehrens accused Mr. Lewis of shoving a white firefighter. After an investigation, that allegation was not sustained. In January 2007 Mr. Lewis was issued a written reprimand by Mr. Mehrens for singing an inappropriate song at the firehouse. An investigation found that no one felt threatened by the song, and it was a popular song. However, Fire Chief Nuanes upheld the written reprimand, finding that Mr. Lewis violated a rule prohibiting employees from "[e]ngag[ing] in intimidating, threatening or hostile behaviors, physical assault, or other acts of this nature." Mr. Lewis requested that this reprimand be removed from his file, but Chief Nuanes denied this request.

Mr. Lewis contacted the Equal Employment Opportunity Commission (EEOC) in May 2007 and informed the Denver Fire Department that he was filing a discrimination complaint. In June 2007 confidential disciplinary documents from Mr. Lewis's file were left in a public place in the station house. On July 10, 2007 Mr. Lewis field a complaint of race discrimination and retaliation with the EEOC. The EEOC issued a "right to sue" letter on December 4, 2008, and Mr. Lewis filed suit on January 5, 2009.

On January 6, 2009 the Division Chief of the Airport Division, Patrick Hynes, gave Mr. Lewis a memo explaining that the department was aware of Mr. Lewis's lawsuit, and that Mr.

Lewis would be subject to work restrictions so that his schedule would not overlap with Mr. Mehrens' work shifts. Mr. Lewis knew this would lead to a reduction in overtime opportunities. On January 21, 2009 Mr. Nuanes informed Mr. Lewis that he would be transferred to another fire station.

On February 13, 2009 Mr. Lewis, while off duty, was involved in an altercation with a Verizon store employee. During the altercation, the Verizon employee, Todd Strong, asked Mr. Lewis what he did, and Mr. Lewis responded that he worked for Denver Fire Department. Mr. Strong sent an email to the Denver Fire Department requesting an apology from Mr. Lewis and the Denver Fire Department. The facts of what occurred during the altercation are disputed by the parties. The next day, February 14, 2009, Mr. Lewis came to the fire station agitated and yelling.

Mr. Hynes placed Mr. Lewis on administrative leave and informed Mr. Lewis that the Denver Fire Department's internal affairs office would investigate the complaint from Mr. Strong. Captain Nuanes removed himself from the investigation and delegated his authority to Deputy Chief Rex King and Mr. Hynes. Mr. King took no part in the investigation. Because of the pending lawsuit by Mr. Lewis, the Denver Fire Department hired a neutral third party to investigate the Verizon store incident. However, after the third party was hired, Denver Fire Department investigator Daniel Diaz went to the Verizon store and interviewed Mr. Strong and his manager. A fact dispute exists as to whether Mr. Diaz encouraged the Verizon employees to make a report to the Denver Police Department about Mr. Lewis or whether he merely assisted the employees in making the report. Mr. Lewis alleges that Mr. Diaz told the Verizon employees that "an arrest would help their case." Mr. Diaz then contacted Denver Police Department dispatch, and a police officer was sent to the store. The police officer that responded was a

cousin of Chief Nuanes. In response to the Verizon employees' reports, the police officer issued a citation to Mr. Lewis for disturbing the peace. As a result, a warrant was issued, and Mr. Lewis was arrested. Mr. Lewis requested a trial on the citation, but on the day his case was set for trial the City Attorney's office requested that the case be dismissed.

After the investigation, Deputy Chief King determined that Mr. Lewis should be demoted. Mr. King submitted his recommendation to Manager of Safety Al LaCabe. Mr. LaCabe demoted Mr. Lewis from Lieutenant to Firefighter 1st Grade. In the Notice of Final Disciplinary Action, Mr. LaCabe explained that the Verizon incident showed a pattern of "being rude to, intimidating and threatening people." Mr. LaCabe cited that over the past four years at least six firefighters requested transfers from being under Mr. Lewis's supervision because of his behavior towards them.

Mr. Lewis appealed his demotion to the Civil Service Commission's hearing officer, and an administrative hearing was held in August 2009. On October 28, 2009 Mr. Lewis withdrew the appeal of his demotion.

**Standard**

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56 (c)). When deciding a motion for summary judgment, the Court considers "the factual record, together with all reasonable inferences derived therefrom, in the light most favorable to the non-moving party . . . ." *Id.* The Court does not weigh the evidence or make credibility determinations. *Id.* The moving party has the burden to show that there is an absence of

evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. In challenging such a showing, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

**Conclusions**

This Court previously dismissed some of the plaintiff's claims. The surviving claims are Mr. Lewis's fourth cause of action against Mr. Diaz for race discrimination and retaliation under 42 U.S.C. § 1981 and 42 U.S.C. § 1983; the sixth cause of action against the City and County of Denver and the Denver Fire Department for race discrimination and retaliation under § 1981 and § 1983; and the seventh cause of action against the City and County of Denver and the Denver Fire Department for race discrimination and retaliation under Title VII.

<u>Race Discrimination and Retaliation under Title VII</u>

Before a plaintiff can bring suit under Title VII he must exhaust his administrative remedies by filing a complaint with the EEOC. "Exhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII." *Jones v. Runyon,* 91 F.3d 1398, 1399 (10th Cir. 1996). An employee must exhaust his administrative remedies for each discrete unlawful employment practice. *Martinez v. Potter,* 347 F.3d 1208, 1210-11 (10th Cir. 2003). "The rule is equally applicable . . . to discrete claims based on incidents occurring after the filing of Plaintiff's EEOC complaint." *Id.*

Mr. Lewis filed a single complaint with the EEOC in July 2007 complaining of the written reprimand he received for singing an inappropriate song in the firehouse. Mr. Lewis never filed an additional complaint or sought to amend his original complaint to include his

5

additional grievances. As such, Mr. Lewis's Title VII claim is limited to the issue which was administratively exhausted, the written reprimand.

To survive summary judgment in a race discrimination case, a plaintiff must establish a prima facie case of discrimination. "To make out a prima facie case of discrimination, [Mr. Lewis] must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees." *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir.2005).

Mr. Lewis cannot show that he suffered an adverse employment action. Under Title VII, an adverse employment action must be material, meaning that it alters the employee's "compensation, terms, conditions, or privileges of employment or adversely affects his or her status as an employee." *Sanchez v. Denver Pub. Sch.,* 164 F.3d 527, 533 (10th Cir. 1998) (quoting *Robinson v. City of Pittsburg,* 120 F.3d 1286, 1301 (3rd Cir. 1997)). A written reprimand in itself is not an adverse employment action absent some evidence that it had an impact on the employee's employment status. *Rennard v. Woodworker's Supply, Inc.,* 101 Fed. App'x 296, 307 (10th Cir. 2007). Mr. Lewis has not presented evidence to show that the written reprimand impacted his employment status. Accordingly, the reprimand alone is not enough to establish an adverse employment action under Title VII. Without an adverse employment action, Mr. Lewis fails to establish a prima facie case of employment discrimination.

<u>Race Discrimination and Retaliation under §§ 1981 and 1983 against Daniel Diaz</u>

The defendants argue that summary judgment in favor of Mr. Diaz is appropriate because Mr. Diaz is entitled to qualified immunity, and because Mr. Diaz did not make the final decision to demote Mr. Lewis.

To overcome summary judgment based on qualified immunity, a plaintiff "must show that the defendant's actions violated a specific statutory or constitutional right, and that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006). In *Olsen v. Layton Hills Mall* the Tenth Circuit held that "we will not grant a defendant official qualified immunity if material facts are in dispute." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1313 (10th Cir. 2002).

Mr. Diaz was involved in the investigation of Mr. Lewis following a complaint made by Mr. Strong, the Verizon store employee. There are several issues of disputed fact as to Mr. Diaz's role in the investigation. First, it is unclear why Mr. Diaz went to the Verizon store to interview employees, because the Denver Fire Department had already hired an independent third party to investigate Mr. Lewis. Second, there are differing accounts as to whether Mr. Diaz encouraged the Verizon employees to make a report to the police or simply assisted them in doing so. Plaintiff has provided evidence to suggest that Mr. Diaz told the Verizon employee that "an arrest would help their case." Strong Dep. June 28, 2010, 30:8-31:25. Mr. Lewis has also provided evidence that Mr. Diaz called and requested that a police officer come to the store, and when the police officer arrived the officer issued a city ordinance violation citation. Plaintiff's Ex. 10. The police officer that responded was Captain Nuanes's cousin. On the date of trial for the citation, the City Attorney's office requested that the case be dismissed. Taking these facts in a light most favorable to Mr. Lewis, the non-moving party, there is enough to suggest that Mr. Diaz conducted his investigation in a way that was prejudicial to Mr. Lewis in retaliation against Mr. Lewis for filing an EEOC complaint or a lawsuit. This is enough to show

that material facts are in dispute as to whether Mr. Diaz violated Mr. Lewis's constitutional right to be free from retaliation for participation in protected activities.

As to the second prong, the law is clearly established that a city employee cannot retaliate against another person for engaging in protected activity. *See e.g. EEOC v. PVNF, LLC¸* 487 F.3d 790, 803 (10th Cir. 2007). Because the material facts surrounding Mr. Diaz's investigation at the Verizon store are disputed, qualified immunity is not appropriate.

Mr. Diaz also argues that summary judgment is appropriate because he was not the final decision maker as to Mr. Lewis's demotion. Although Mr. Diaz was not the final decision maker, Mr. Lewis has presented evidence to show that Mr. Diaz's investigation played a role in the decision to demote Mr. Lewis. In the Notice of Final Disciplinary Action, the Manager of Safety, Mr. LaCabe, discussed Mr. Lewis's citation for disturbing the peace as a justification for the demotion. Although Mr. Diaz was not the one to demote Mr. Lewis, if his investigation was prejudicial, it would be an adverse employment action, because it adversely impacted the terms of Mr. Lewis's employment. *Sanchez,* 164 F.3d at 533. This is the converse to the written reprimand discussed above. The written reprimand was not an adverse employment action, because there was no evidence that it negatively impacted Mr. Lewis' terms and conditions of employment. However, Mr. Diaz' investigation was used by other people to determine that the appropriate discipline for Mr. Lewis was demotion. Mr. Diaz's investigation impacted the terms and conditions of Mr. Lewis's employment and was, therefore, a materially adverse employment action even though Mr. Lewis was not the ultimate decision maker. Accordingly, Mr. Diaz is not entitled to summary judgment.

Race Discrimination and Retaliation under §§ 1981 and 1983

Mr. Lewis also claims unconstitutional race discrimination and retaliation under §§ 1981 and 1983 against the City and County of Denver, and the Denver Fire Department. 42 U.S.C. § 1983 provides in pertinent part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law...."

Therefore, a suit under § 1983 must be brought against a "person" within the meaning of the statute. The Denver Fire Department is not a person that can be sued under § 1983. In *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690 (1978), the Supreme Court held that municipalities and other local governments are persons to whom § 1983 applies. In *Monell* the Court explained that asserting an official capacity suit against a department official is sufficient to name the municipality itself. *Monell*, 436 U.S. 658. Thus, the actions of a person acting in his official capacity are equated to the actions of the municipality itself.

In *Brandon v. Holt,* 469 U.S. 464, 470 (1985) the Supreme Court held that government departments have no greater separate identities from cities than do their officials when they are acting in their official capacities. 496 U.S. at 472. After *Monell* courts have dismissed § 1983 claims that have sought to impose liability directly upon municipal and county departments rather than the municipalities themselves. *Stump v. Gates*, 777 F. Supp. 808, 815 (D. Colo. 1991) *aff'd,* 986 F.2d 1429 (10th Cir. 1993). Further, under Colorado law, municipalities and counties, not their various subsidiaries and departments, are empowered with the ability to sue and be sued. C.R.S. § 31-15-101. Therefore, because municipal departments enjoy no status independent of the municipality itself, municipal departments cannot be held separately liable for

9

§ 1983 damages. *Stump,* 777 F. Supp. at 816. The City and County of Denver, not the Denver Fire Department, is the proper defendant under § 1983. Accordingly, summary judgment is granted for the Denver Fire Department.

Under *Monell*, for a plaintiff to succeed on a claim against a municipality under § 1983 he must show more than vicarious liability. Instead, a plaintiff must establish "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Oklahoma Cnty., Bd. of Cnty. Comm'rs,* 151 F.3d 1313, 1316 (10th Cir. 1998). As discussed above, Mr. Lewis has presented sufficient evidence to create a genuine issue of material fact as to whether an employee, Mr. Diaz, violated Mr. Lewis's constitutional rights.

The existence of a policy or custom can be established many different ways, including demonstrating the existence of

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Duran v. City and Cnty. of Denver,* No. 10-cv-01569-REB-KMT, 2012WL 4478800 (D. Colo. Sept. 28, 2012) (quoting *Bryson v. City of Oklahoma City,* 627 F.3d 784 (10th Cir. 2010)). Mr. Lewis has not gone so far as to allege a formal regulation or policy statement.

Mr. Lewis has provided some statements about the Denver Fire Department's applying discipline in a way that discriminates against African American fire fighters that arguably might suggest a practice or custom. He has prepared a chart of discipline from Denver Fire Department disciplinary records showing date, name, race, conduct, and discipline received. [#207, Ex. 4].

However, this chart does not include any information about the firefighters' rank, disciplinary history, or supervisor. With such limited information it is difficult to determine whether there was a widespread practice of disciplining African American firefighters differently than other firefighters.[1]

Next, policy or custom can be shown based upon the decisions of employees with final policy making authority or ratification of others' decisions by those final policy makers. "[W]hether a particular official has 'final policymaking authority' is a question of *state law*." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988) (emphasis original). Defendants argue that under Colorado state law the Civil Service Commission is the final policymaking authority, because the Manager of Safety's decision is appealable to the Civil Service Commission. *Casados v. Denver,* 924 P.2d 1192, 1195-97 (Colo. App. 1996).

However, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy *in that area* of the city's business. *City of St. Louis,* 485 U.S. at 123. For disciplinary actions within Denver Fire Department, up to and including a written reprimand, the Manager of Safety is not involved. Rather, it is the Fire Chief who makes those decisions. Nuanes Dep. 28:20-21:20. Mr. LaCabe, the Manager of Safety, determined that Mr. Lewis should be demoted. That that decision was reviewable to the Civil Service Commission. However, Mr. Lewis alleges a series of events that he describes as discriminatory or retaliatory that did not rise to the level of review by Mr. LaCabe. Mr. Lewis describes a written reprimand, his disciplinary file's being left in public, work restrictions, a transfer, and a prejudiced investigation. These actions would not come before the Manager of Safety or Civil Service Commission. Rather, they were within the policy

---

[1] There are also some credibility issues with the chart, created by plaintiff's counsel, because the spaces for entry of Mr. Lewis's conduct have been left blank.

discretion of Chief Nuanes. Mr. Lewis has presented enough evidence to create a triable issue as to whether Chief Nuanes either made these decisions or ratified them. A jury could determine that through Mr. Nuanes decisions there was a policy or custom that was the moving force behind Mr. Lewis's alleged constitutional deprivation. Accordingly, the City and County of Denver is not entitled to summary judgment under *Monell*.

### Order

Motion #193 is GRANTED IN PART and DENIED IN PART.

1. Summary Judgment is DENIED as to Claim 4.
2. Summary Judgment is DENIED as to Claim 6 against the City and County of Denver.
3. Summary Judgment is GRANTED as to Claim 6 against the Denver Fire Department.
4. Summary Judgment is GRANTED as to Claim 7.

DATED this 2nd day of January, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge